IN THE ~~IOWA~~UNITED STATES DISTRICT COURT
FOR ~~WARREN COUNTY~~THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SHAUNAYE BENGTSON,<br><br>    Plaintiff,<br><br>vs.<br><br>ASPEN DENTAL MANAGEMENT, INC.~~and ADMI CORP d/b/a TAG – THE ASPEN GROUP,~~,<br><br>        ~~Defendants~~Defendant. | Case No. ————————4:24-cv-00302-SHL-WPK<br><br><br>**AMENDED**<br>**PETITION AT LAW**<br>**AND**<br>**JURY DEMAND** |

COMES NOW the Plaintiff, Shaunaye Bengtson, and for her causes of action hereby states the following:

## INTRODUCTION

1.      This is an employment discrimination action challenging ~~Defendants'~~Defendant's sexual harassment, sex discrimination, and retaliation against Plaintiff, in violation of the Iowa Civil Rights Act and Title VII of the Civil Rights Act of 1964.

2.      Plaintiff Shaunaye Bengtson is a citizen and resident of Ackworth, Warren County, Iowa.

3.      Defendant Aspen Dental Management, Inc. is a Delaware corporation doing business in Warren County, Iowa.

4.      ~~Defendant ADMI Corp. is a Delaware corporation doing business in Warren County, Iowa, as TAG – The Aspen Group.~~

5.      ~~ADMI Corp. is the parent company of Aspen Dental Management, Inc. Hereafter, the Defendants are collectively referred to as "Aspen."~~

1

6.4.     Venue is appropriate in this District under Iowa Code section 216.16(5), as the discriminatory acts of which Plaintiff complains occurred in Warren County, Iowa.

## PROCEDURAL REQUIREMENTS

7.5.     On approximately November 21, 2023, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against ~~Defendants~~Defendant with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

8.6.     On approximately May 16, 2024, less than 90 days prior to the filing of ~~this~~her Petition, the Iowa Civil Rights Commission issued an Administrative Release with respect to Plaintiff's charges against ~~Defendants~~Defendant.

7.     On approximately July 24, 2024, less than 90 days prior to the filing of her Amended Petition, the Equal Employment Opportunity Commission issued an Administrative Release with respect to Plaintiff's charges against Defendant.

## FACTS

9.8.     Plaintiff Shaunaye Bengtson is a female, protected from discriminatory practices by state law.

10.9.     ~~Defendants are engaged in a joint enterprise providing~~Defendant Aspen Dental Management, Inc. ("Aspen") provides dental services on a national, for-profit basis, including in Warren County, Iowa.

11.10.  On approximately January 30, 2023, Aspen hired Shaunaye to work as a Division Director of Human Resources.

12.11.  As Division Director of Human Resources, Shaunaye was responsible for providing senior level human resources expertise to practices located in Missouri, Kansas, Indiana, and the Chicago area of Illinois.

13.12.  Shaunaye provided human resources functions for 104 dental offices that employed over 1,000 Aspen employees.

14.13.  Although Shaunaye's work involved managers and employees in other states, her assigned work area was her home in Warren County, Iowa, her employment took place in Iowa, and Aspen intended for her to remain an Iowa employee.

15.14.  At the time of the incidents alleged in this Petition, Shaunaye reported to Vice President of Field Human Resources Rachel Posey ("Posey").

16.15.  In February 2023, Shaunaye attended a field kickoff meeting in Chicago.

17.16.  During this meeting, Aspen emphasized the importance of pleasing the doctor owners that contract with it.

18.17.  It was commonly expressed that doctors are our favorite people because they bring all the money.

19.18.  An Aspen website highlights its commitment to providers over all other concerns: "… empower the provider and the rest will follow."[1]

20.19.  Employees of Aspen were instructed to do whatever was necessary to make the doctors happy and warned that if doctors are not happy, we (Aspen) don't get money, and you (employees like Shaunaye) don't get paid.

21.20.  This type of direction emboldened the doctors associated with Aspen and resulted in rampant sexual harassment throughout the organization.

22.21.  Dr. Alexander Wojtyna is an owner associated with Aspen.

---

[1] https://www.teamtag.com/our-story/ (Retrieved July 10, 2024).

23.22.  Shaunaye handled numerous employee relations issues coming out of Dr. Wojtyna's practice, including behavior from Dr. Wojtyna that she considered inappropriate and harassing.

24.23.  Shaunaye repeatedly raised these concerns with Posey and Director of Employee Relations Lisa Boylan ("Boylan"), and questioned why Dr. Wojtyna was still allowed to be an owner when he was harassing his employees.

25.24.  Posey and others involved in the process told Shaunaye that there a was legal process to be followed, but they seemed to be sweeping Dr. Wojtyna's conduct under the rug.

26.25.  Shaunaye learned of similar complaints against Dr. Joseph Formanek, who took dental assistants out bowling, bought belly button piercings for employees, and invited at least one assistant back to his hotel room after a night of drinking.

27.26.  Shaunaye repeatedly raised concerns about this type of illegal behavior, but Aspen refused to act when a doctor owner was the bad actor.

28.27.  Aspen held a leadership retreat in Orlando from October 16-21, 2023.

29.28.  Before the event, Division Director of Human Resources Amber Musser ("Musser") warned Shaunaye that she "should not walk alone" at the event.

30.29.  On Thursday, October 19, 2023, Aspen held an "Aspenville" Margaritaville-themed party at the event hotel.

31.30.  All owners, dentists, and field leaders were invited to the event to celebrate Aspen, and Aspen served copious amounts of alcohol.

32.31.  Shaunaye left the event to use a restroom on the way back to her room to pump as she had recently returned from maternity leave.

33.32.  On Shaunaye's path, she had to pass the pool area and as she did so, a man approached her and firmly grabbed her right wrist, catching her off guard.

34.33.  The man commented, "You look familiar," to which Shaunaye responded that she had started working for Aspen earlier that year and he may have met her at a kick-off event in Chicago eight months earlier.

35.34.  Shaunaye then looked at the man's nametag and saw it was Dr. Mukuka Kapilikisha, an owner who ran an office in Missouri.

36.35.  Shaunaye commented "Oh, you're an owner. How many offices do you own and where are they?"

37.36.  Dr. Kapilikisha grabbed Shaunaye's left hand and wrist and began stroking her fingers, including her ring finger. He retorted, "I have one, is that not good enough for you? It's in Branson, Missouri. Do you want me to have more?"

38.37.  Shocked by this response, Shaunaye responded, "No, not at all," and informed Dr. Kapilikisha that she needed to use the restroom. Dr. Kapilikisha responded that he would be there waiting for her.

39.38.  Shaunaye used the restroom and fled to her hotel room where she stayed the remainder of the night out of fear of seeing Dr. Kapilikisha again.

40.39.  The following morning, Shaunaye informed Musser what had happened, and Musser responded, "This is why you can't walk alone at these events."

41.40.  Shaunaye also spoke with Division Director of Human Resources Melanie Walls ("Walls") about being assaulted.

42.41.  Similar to Musser, Walls was not surprised and responded, "That's just the way owners act. I'm not saying it's right, but it's just what owners do."

43.42.  Shaunaye also informed Division Vice President Jennifer Cass ("Cass") about the assault and harassment.

44.43.  Musser, Walls, and Cass all acknowledged that the conduct was unacceptable, but their responses implied it was just to be expected—and allowed—from the doctors.

45.44.  On October 26, 2023, Shaunaye had a one-on-one video meeting with Posey.

46.45.  At the end of the discussion, Shaunaye said, "I need to tell you about something that happened last week at leadership, during the Aspenville night."

47.46.  Posey stopped Shaunaye, saying, "Whoa, whoa, whoa." Posey said she would have to document whatever Shaunaye was going to report, and that Boylan would have to reach out and decide whether an investigation would need to take place.

48.47.  Posey further discouraged Shaunaye from saying anything by warning, "Before you tell me, I want you to think about that."

49.48.  Shaunaye told Posey she was still going to tell her because she needed the situation documented.

50.49.  Shaunaye then told Posey about Dr. Kapilikisha harassing her.

51.50.  Posey told Shaunaye she was going to pair her up with Boylan.

52.51.  On October 27, 2023, Posey sent Shaunaye a link to a website form to report the incident.

53.52.  Shaunaye submitted the electronic report on October 31, 2023.

54.53.  Also on October 31, Shaunaye presented an engagement presentation and went over her division's results with Cass, who was so impressed she asked Shaunaye to present to the entire region the following Monday, November 6, 2023.

55.54.  Musser told Shaunaye that Cass called Musser shortly after Shaunaye's presentation to tell her how well Shaunaye was doing in her job.

56.55.  On Thursday, November 2, 2023, Aspen fired Shaunaye.

57.56.  Posey called Shaunaye at 9:30 a.m., along with Senior Director, Human Resource Business Partner Julie Sorenson.

58.57.  Posey informed Shaunaye that Aspen was firing her based on an "inability to manage the performance" of her division, although no details were provided.

59.58.  Shaunaye responded that she was confused as there had been no conversations about this.

60.59.  Posey refused to address Shaunaye's questions.

61.60.  Aspen never disciplined Shaunaye for misconduct, counseled or even coached her about work performance, or otherwise suggested that she was not meeting company expectations.

62.61.  Posey routinely complimented Shaunaye's work.

63.62.  Rachel Posey was an employee and agent of ~~Defendants~~Defendant, acting at all material times in the scope of her employment and agency.

64.63.  Julie Sorenson was an employee and agent of ~~Defendants~~Defendant, acting at all material times in the scope of her employment and agency.

**COUNT I**
**VIOLATION OF THE IOWA CIVIL RIGHTS ACT**
**SEXUAL HARASSMENT, SEX DISCRIMINATION AND RETALIATION**

65.64.  Plaintiff ~~reallages~~realleges paragraphs 1 through ~~64~~63 as if fully set forth herein.

~~66.1.   Defendants subjected Plaintiff to harassing and discriminatory conduct.~~

~~67.1.   Plaintiff's sex was a motivating factor in the discrimination and harassment.~~

7

65.     Defendant subjected Plaintiff to harassing and discriminatory conduct.

66.     Plaintiff's sex was a motivating factor in the discrimination and harassment.

68.67.  Plaintiff complained to ~~Defendants~~Defendant about the sexual harassment she suffered and otherwise opposed practices made unlawful by the Iowa Civil Rights Act.

69.68.  ~~Defendants~~Defendant retaliated against Plaintiff by firing her.

70.69.  Plaintiff's complaints of sexual harassment were a motivating factor in ~~Defendants'~~Defendant's retaliation against her.

71.70.  As a result of ~~Defendants'~~Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, feelings of betrayal, intimidation, embarrassment, lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against ~~Defendants, jointly and severally,~~Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for prejudgment and post judgment interest, for attorney's fees and expenses, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**SEXUAL HARASSMENT, SEX DISCRIMINATION AND RETALIATION**

71.     Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

72.     Defendant subjected Plaintiff to harassing and discriminatory conduct.

73.     Plaintiff's sex was a motivating factor in the discrimination and harassment.

74. Plaintiff complained to Defendant about the sexual harassment she suffered and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964.

75. Defendant retaliated against Plaintiff by firing her.

76. Plaintiff's complaints of sexual harassment were a but-for cause of Defendant's retaliation against her.

77. Defendant's discrimination, harassment, and/or retaliation against Plaintiff was intentional.

78. In its discrimination, harassment, and/or retaliation against Plaintiff, Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

79. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, feelings of betrayal, intimidation, embarrassment, lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for prejudgment and post judgment interest, for punitive damages, for attorney's fees and expenses, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

Respectfully submitted,

*/s/ Brooke Timmer*

**TIMMER, JUDKINS & BORLAND, P.L.L.C.**

/s/ Brooke Timmer
Brooke Timmer AT0008821
brooke@tjb.law
Nathan Borland AT0011802
nate@tjb.law
1415 28th St., Street, Suite 375
West Des Moines, IA 50266
Telephone: (515) 259-7462
Fax: (515) 361-5390
**ATTORNEYS FOR PLAINTIFF**